[No. D007947. Fourth Dist., Div. One. Aug. 31, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTEMUS BLANKENSHIP et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III, V, VI and VII.

**COUNSEL**

Gregory Marshall and Joel M. Kriger, under appointments by the Court of Appeal, for Defendants and Appellants..

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Roy W. Hewitt, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—Artemus Blankenship and Michael Watson appeal judgments following convictions for respectively, robbery (Pen. Code,[2] § 211) and receiving stolen property (§ 496, subd. 1), and other crimes. Blankenship asserts the court erred in giving the instruction on flight (CALJIC No. 2.52), in failing to sua sponte give the unanimity instruction (CALJIC No. 17.01), in inadequately stating reasons for imposing aggravated and consecutive prison terms, and in not staying a sentence. Watson faults an instruction on a lesser related offense. We find these attacks to be without merit. However, we hold that under Government Code section 13967, an insurance company cannot be awarded restitution, and the total award cannot exceed $10,000. Accordingly, we strike a portion of the restitution order, modify the abstract of judgment to reflect the proper sentence, and affirm the judgments as modified.

---

[2] All statutory references are to the Penal Code unless otherwise specified.

I-III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV

### RESTITUTION ORDER

#### A

Blankenship's sentencing was postponed one week to permit time to respond to the probation report. That report itemized the victims' economic losses. One victim (Wroe) estimated her losses at $7,000, of which Farmers Insurance reimbursed her $3,792.87. She claimed a noncompensated loss of $3,207.13 and Farmers Insurance claimed reimbursement of its $3,792.87. A second victim (Hallett) estimated her losses at $4,000. The total amount of restitution claimed was $11,000. The probation report recommended the statutory maximum of $10,000 restitution to the victims and a $100 fine.

At Blankenship's sentencing hearing on April 17, 1988, the court stated it believed restitution was limited to $10,000 pursuant to Government Code section 13967 and ordered that amount—Hallett to receive $4,000, Wroe her unreimbursed $3,207.13, and Farmers Insurance Company was to be indemnified for its insurance payment of $3,792.87. *In addition,* a $100 restitution fine was ordered paid under section 2085.5. Blankenship's liability was made joint and several with Watson's.

#### B

Blankenship argues (1) imposition of a $10,000 fine on an indigent person violates the constitutional protection against excessive fines in article I, section 17 of the California Constitution; (2) making the fine payable to the victims created an enforceable judgment for money damages without notice or hearing or proof of damage, thereby violating due process; (3) the court erred in failing to receive evidence to prove the economic losses and to identify the losses in its order; and (4) the restitution order exceeded the statutory authorization.

Preliminarily, we decline to address Blankenship's assertion that it is excessive under article I, section 17 of the California Constitution to impose a $10,000 fine on an indigent person. He raises this argument in his opening

---

*See footnote 1, *ante,* page 992.

brief in a single sentence, without discussion or citation to authority, positing that its merit seems "beyond dispute," and then in his reply brief requests an opportunity for supplemental briefing should the court consider the issue on appeal. We deem the issue waived and decline to address it.

Government Code section 13967, subdivision (a) (hereafter referred to as subdivision (a)) provides that if a person is convicted of *one or more felony offenses,* the court shall impose a restitution *fine* of no less than $100 and not more than $10,000. In setting the amount of the fine the court shall consider any relevant factor, including the seriousness and gravity and circumstances of the offense, the economic gain derived by the defendant, and the extent to which others suffered losses as a result of the crime, including pecuniary losses and intangible losses such as psychological harm. Subdivision (a) fines are deposited in the state's restitution fund pool to pay claims filed by victims.

In 1986, subdivision (c) was added to Government Code section 13967 (hereafter referred to as subdivision (c)), allowing for direct payment of restitution orders to victims, providing: "In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, but not to exceed ten thousand dollars ($10,000). *A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment . . . ."* (Italics added.)

■ In *People* v. *Sandoval* (1989) 206 Cal.App.3d 1544, 1549-1550 [254 Cal.Rptr. 674], the court held that a defendant who is ordered to pay a restitution fine under subdivision (c) need not be given an opportunity to contest his ability to pay the fine. *Sandoval* distinguishes those cases holding that ability to pay must be considered when restitution is imposed as a condition of probation, since in such a situation if the defendant cannot pay he may be imprisoned. In contrast, under subdivisions (a) and (c), the order is only enforceable as a civil judgment.

Regarding the extent of the defendant's due process rights under subdivision (c), *Sandoval* states the general proposition that " '[w]hatever the specific procedural safeguards required at a sentencing hearing concerning restitution, fundamental fairness must be assured . . . [and the] . . . defendant must be afforded a reasonable opportunity to be heard on the issue of restitution.' " (206 Cal.App.3d at p. 1550.) In *Sandoval,* the probation report contained a statement by the victim indicating the damage to property exceeded $4,000, however, the probation report recommended only a

$1,000 fine and did not recommend restitution to the victim. The trial court nevertheless unexpectedly ordered $4,000 restitution to the victim. Since the defendant had no reason to contest the amount of restitution which was not recommended in the probation report or to expect such an assessment, on appeal the court found the defendant had been denied the opportunity to contest the validity of the $4,000 figure. Here, however, Blankenship cannot claim surprise, since the probation report recommends the amount awarded.

In *People* v. *Williams* (1989) 207 Cal.App.3d 1520, 1522 [255 Cal.Rptr. 778], the trial court ordered the defendant to pay the victim $250 restitution, the deductible amount of her collision insurance, and also to reimburse the insurance company the $1,416 it had paid the victim for her losses. On appeal, the court held the defendant could not be ordered under subdivision (c) to pay either the insurance company or the victim for the losses which were compensated by insurance. However, the court upheld the amount awarded to the victim based on the deductible. The court rejected the defendant's argument that due process was violated since the restitution order was imposed without a trial, since the defendant was advised in the plea agreement that he might be ordered to pay restitution to the victim, and "the court entered its order after considering the probation report and after a probation and sentencing hearing," which "is all the process [the defendant] was due." (*Id*. at p. 1524.)

A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed and expected to be ordered under Government Code section 13967, and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing.[4] Blankenship was given the opportunity to challenge the accuracy of the monetary claims at his sentencing hearing, but did not. The court had stated it would set a hearing for any challenge and, in fact, Watson took advantage of that right. Blankenship cannot now complain of any lack of due process.

---

[4] For the proposition that he was entitled to a hearing, Blankenship cites cases where restitution was ordered as a condition of probation under section 1203.1. In *People* v. *Scroggins* (1987) 191 Cal.App.3d 502, 508 [236 Cal.Rptr. 569], this court stated that "a trial court is required to grant *a defendant's request for a hearing* on the issue of restitution" (italics added) imposed as a condition of probation. Our holding here is consistent with *Scroggins*—i.e., if the defendant disputes the figures presented in the probation officer's report, he is entitled to a hearing. To the extent case law suggests a defendant is entitled to a hearing and proof of the losses for restitution under section 1203.1 *even in the absence of a request,* (see, e.g., *People* v. *Narron* (1987) 192 Cal.App.3d 724, 736 [237 Cal.Rptr. 693]; *People* v. *Vournazos* (1988) 198 Cal.App.3d 948, 958 [244 Cal.Rptr. 82]), we hold that level of due process is not required for a restitution order under Government Code section 13967. As pointed out in *People* v. *Sandoval, supra,* 206 Cal.App.3d at page 1549, with restitution under Government Code section 13967, a defendant cannot be imprisoned for failure to pay the fine.

In addressing Blankenship's evidentiary attack, we note subdivision (c) requires the restitution order to *"identify the losses to which it pertains. . . ."* (Italics added.)

Here, the probation report and the trial court's order recite only a lump sum total value of undefined losses estimated by each victim. ■ Since subdivision (c) by its terms only relates to economic losses, and since the subdivision nevertheless expressly requires restitution orders to identity those losses, it appears that the subdivision contemplates more than a "bottom line" sum.[5] We conclude the Legislature intended restitution orders under subdivision (c) for economic losses to be supported by reference to a factual basis for the claim. This would more adequately apprise defendants of the accuracy of restitution claims, permit the court to better evaluate their merits, and perhaps forestall challenges to those orders. ■ However, because Blankenship chose not to contest the matter at sentencing, we deem he has waived any right to challenge the order for lack of specificity.

## C

As recommended in the probation report, the court ordered Blankenship to pay a $100 restitution fine under subdivision (a), pursuant to section 2085.5.[6] Further, the court ordered the maximum $10,000 restitution under subdivision (c)—i.e., first paying $4,000 to Hallett and $3,207.13 to Wroe, and the remainder to the insurance company (i.e., $2,792.87) to satisfy its claim for $3,792.87.[7] Thus, the court's total restitution order was for $10,100. As we explain, we conclude the court erred in ordering a total fine in excess of $10,000, and in ordering payment to the insurance company.

---

[5] In contrast, there is no language in subdivision (a) requiring specification of the loss to which the order pertains. Subdivision (a) provides that the fine paid into the state's victim restitution fund can be premised on any relevant factors, including the seriousness of the crime, economic gain by the defendant, and the extent to which others suffered pecuniary or intangible losses. The trial court has broad discretion in deciding the amount of the fine under subdivision (a), and need not provide a statement of reasons on the record, although the amount of the fine must be supported by the record, including the circumstances set forth in the probation officer's report. (*People* v. *Griffin* (1987) 193 Cal.App.3d 739, 741 [238 Cal.Rptr. 371]; *People* v. *Reyes* (1987) 195 Cal.App.3d 957, 966 [240 Cal.Rptr. 752]; *People* v. *McGhee* (1988) 197 Cal.App.3d 710, 714 [243 Cal.Rptr. 46].)

[6] Section 2085.5 provides for deductions from a prisoner's wages to pay for a fine imposed under subdivision (a).

[7] An unclarity arose from the court's statement at the sentencing hearing that the insurance company was to be paid its $3,792.87 after Wroe and Hallett, whereas it is apparent the trial court intended the company to receive only $2,792.87 (as recommended in the probation report) in order to stay within the $10,000 limit. When the oral transcript and the minutes of the judgment are read, there is no question but that the court intended to stay within a $10,000 limit under subdivision (c) for restitution to the victims.

The court's order also does not specifically refer to subdivisions (a) and (c), but again its intent is obvious and the parties do not claim otherwise.

In *People* v. *Serna* (1988) 203 Cal.App.3d 728, 730-731 [249 Cal.Rptr. 861], the court interpreted Government Code section 13967 as permitting a trial court to both impose a restitution fine under subdivision (a), and to order direct restitution to the victim under subdivision (c), limited to a total of $10,000. Agreeing with *Serna, People* v. *Frey* (1989) 209 Cal.App.3d 139, 142-143 [256 Cal.Rptr. 810], holds that section allows a maximum order of $10,000 regardless of the number of victims or counts involved. (See also *People* v. *Sutton* (1989) 212 Cal.App.3d 1254 [261 Cal.Rptr. 194].)

Although recognizing these precedents, the People ask us to reject them arguing the court is empowered to order $10,000 per victim.[8] We hold a plain reading of Government Code section 13967, subdivision (a) supports the precedent in *Serna* and *Frey*.

First, subdivision (a) states " . . . if the person is convicted of one or more felony offenses, the court shall impose a . . . fine of not . . . more than ten thousand dollars ($10,000). . . ." Thus, it is apparent the Legislature capped this fine at $10,000 regardless of how many separate felony offenses may have been committed.

Second, reading subdivision (a) in context with its companion subdivisions in Government Code section 13967, forces us to conclude the addition of subdivision (c) permitting direct restitution to victims, does not permit imposing a $10,000 fine on a single defendant for each victim, as the People suggest. The direct payment in subdivision (c) is expressly made "in lieu of imposing all or a portion of the restitution fine, . . ." Since the only restitution fine is that single $10,000 limited penalty defined in subdivision (a), we construe the section in context to limit a restitution fine to a total of $10,000, regardless of the number of victims or amount of actual loss. We realize that losses from felonies involving multiple victims may exceed $10,000 so that recourse to civil proceedings for the excess may be required, however, because the same is true for crimes against a single victim, it is obvious the Legislature did not draft Government Code section 13967 intending to fully redress these losses.

Finally, we agree with the holding in *People* v. *Williams, supra,* 207 Cal.App.3d at pages 1523-1524, that an insurance company is not a victim contemplated by subdivision (c). *Williams* reasons that the insurer does not fit the definition of a victim in Government Code section 13960, subdivision (a),[9] nor is it the functional equivalent of a victim injured as a "direct result

---

[8] At appellate oral argument, the People in fact argued there were *three* victims, permitting $30,000 in fines: $10,000 each to Wroe, Hallett and the insurance company.

[9] That section refers to persons who sustain injury or death as a direct result of a crime; to persons legally dependent on the injured or deceased person; to family members under cer-

of a crime" because its obligation to pay the injured person arises from contractual obligation based on the premiums paid by the insured. Further, *Williams* holds the trial court could not order restitution to the injured party for the funds already paid by the insurer, since under subdivision (c) the restitution awarded may not exceed the victim's losses, and Government Code section 13960, subdivision (d) defines pecuniary losses as " 'any expenses for which the victim has not and will not be reimbursed from any other source.' " (*People* v. *Williams, supra,* 207 Cal.App.3d at p. 1524.)

The portion awarded to the insurance company must be stricken, which reduces the total restitution order to less than the $10,000 limit.[10]

### V-VII*

. . . . . . . . . . . . . . . . . . . .

#### DISPOSITION

Regarding both appellants,[14] the restitution order to the insurance company is stricken and the superior court shall amend its restitution order accordingly. The judgments are otherwise affirmed.

Wiener, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied September 20, 1989, and appellants' petition for review by the Supreme Court was denied November 30, 1989.

---

tain circumstances; and to persons who assume legal responsibility or voluntarily pay expenses in the event of a death caused by a crime.

[10] Technically, we could remand to the trial court to permit it to consider increasing the amount of the fine under subdivision (a). We believe it is judicially uneconomical to do so because of the further hearings this would necessitate and the small financial benefit to be gained, if any.

*See footnote 1, *ante,* page 992.

[14] Although appellant Watson does not challenge the restitution order, the joint and several order should be corrected for both appellants.