[No. E013454. Fourth Dist., Div. Two. Aug. 3, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
RITA INESE WHISENAND, Defendant and Appellant.

1384

COUNSEL

Richard V. Myers, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Warren P. Robinson and Sara Gros-Cloren, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HOLLENHORST, Acting P. J.—Having pled guilty to one count of embezzlement (Pen. Code, § 503), defendant appeals to challenge a victim

restitution order made after a lengthy restitution hearing. Specifically, she contends that the trial court erred (1) in awarding interest on the actual losses to the victim; (2) expressly finding that she had the ability to pay for the services of court-appointed counsel; (3) impliedly finding that she had the ability to pay the restitution award; and (4) in ordering her to pay costs of court-appointed counsel, costs of the probation report, and costs of probation supervision.

## FACTS AND PROCEDURAL HISTORY[1]

Defendant was an employee of a hardware store in Murrieta. The store also had an accompanying gas station business. After the owner noticed irregularities, he called the sheriff's department. Defendant admitted to a deputy that she had taken $500 from the cash register between March and May 1992.[2] She also admitted inflating her working hours on her time sheets.

To avoid prosecution, defendant entered into an agreement with the store owner in which she agreed to repay $2,500 which she admitted taking from the hardware store. At that time, she denied taking any funds from the gas station.

Subsequently, the store owner discovered substantial losses from the gas station operation. According to the owner, these losses totalled $19,021.32 for the period from January through May 1992. Charges were filed and defendant admitted the embezzlement. The store owner offered another settlement agreement for $25,000, consisting of $19,000 plus $2,500 plus interest. Defendant refused the offer.

At sentencing the trial court placed defendant on probation for three years with weekend custody for one hundred days. It also ordered that defendant pay costs of the presentence report and probation supervision under Penal Code section 1203, in an amount not to exceed $2,300. A restitution fine of $2,000 was stayed pending satisfactory completion of probation. The trial court also ordered victim restitution in an amount to be determined.

## RESTITUTION HEARING

The probation department set victim restitution at $19,221.32 and defendant requested a hearing on the restitution amount. A three-day restitution hearing ensued.

---

[1]Since defendant pled guilty, the facts are taken from the probation report.
[2]Subsequently, she admitted taking $1,000. The victim claimed $3,600 was taken, and the settlement agreement was for $2,500.

The store owner testified that he calculated losses in his hardware business at $3,600. In June 1992, he agreed to accept $2,500 from defendant in installment payments to repay the loss. In August 1992, he became aware of losses in the gas station business of approximately $20,000. An accountant testified to losses of $21,093.22, and documentary evidence was introduced to support that figure.

Defendant testified that she stole about $7,000 from the gas station portion of the business. She explained the difference between the $7,000 and the claimed $20,000 by suggesting that other employees were also stealing from the business. She also stated that the victim asked for $25,000 in order to receive $5,000 in interest on the stolen money.[3]

The trial court conducted a thorough review of the documentary evidence and found a total of embezzled money from the gas station business of $18,909. It rejected the contention that other people were also embezzling and assessed defendant with the full amount plus interest of $2,756 for a total of $21,665.[4] The court also found that defendant was able to pay for court-appointed counsel and ordered payment in the sum of $800.[5]

### AWARD OF INTEREST ON VICTIM RESTITUTION

 Defendant first contends that the trial court's award of interest in the sum of $2,756 was improper. She argues that the statutory authority for victim restitution, former Penal Code section 1203.04, does not authorize an interest award.[6] Defendant thus concludes that "pre-judgment interest on a

---

[3]The civil settlement of $2,500 for embezzlement from the hardware side of the business was thus not part of the claim for restitution of $25,000 for embezzlement from the gas station side of the business. Defendant's testimony to this effect thus contradicted the victim's statements, as quoted in the probation report.

[4]Interest was computed at the rate of 10 percent from April 1, 1992, through September 1, 1993.

[5]The clerk's minutes erroneously state the amount as $900.

[6]In 1993, Penal Code section 1203.04 provided, in pertinent part: "(a) In every case where a person is convicted of a crime and is granted probation, the court shall require, as a condition of probation, that the person make restitution as follows: [¶] (1) To the victim . . . . [¶] (d) For purposes of paragraph (1) of subdivision (a), 'restitution' means full or partial payment for the value of stolen or damaged property, medical expenses, and wages or profits lost due to injury or to time spent as a witness or in assisting the police or prosecution, which losses were caused by the defendant as a result of committing the crime for which he or she was convicted. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (Stats. 1992, ch. 682, § 5.)

victim's business loss due to the criminal activity of a defendant is not authorized as a compensable item of victim restitution."[7]

█ In interpreting a penal statute, we first look to the plain meaning of the words used by the Legislature. If we find ambiguity, the legislative intent helps to resolve it. In either case, we interpret the statute in the context of other statutes on the same subject in order to interpret the statutory scheme as a whole. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134]; *People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27]; see generally, 3 Sutherland, Statutory Construction (5th ed. 1992) §§ 59.03-59.08, pp. 102-145.)

█ The statute, former Penal Code section 1203.04, does not specifically refer to an award of interest on embezzled funds. Defendant therefore argues that the phrase "replacement cost of like property" is, for embezzled money, a sum equal to the amount taken, without provision for interest. Respondent notes, however, that the statute does refer to repayment of lost profits caused by the actions of defendant. Arguably, the money embezzled could have been invested to produce profits that were lost because of the embezzlement. Interest would thus be a measure of the lost profits.

We thus find ambiguity in the statute. The ambiguity is resolved by consideration of the overall statutory scheme for restitution.

In June 1982, the voters approved Proposition 8, which added article I, section 28 to the state Constitution. Section 28, subdivision (b) states, in part: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer." The section also requires the Legislature to adopt provisions to implement the section.

█ "Because the constitution speaks of 'comprehensive provisions and laws,' 'restitution . . . for financial losses,' and '[r]estitution . . . from the convicted persons in every case,' the mandate is clearly to interpret implementing statutes broadly and liberally to the end that the 'unequivocal intention of the People of the State of California that all persons who suffer

---

[7]Respondent argues that the issue is waived by failure to object at the restitution hearing. (*People* v. *Neal* (1993) 19 Cal.App.4th 1114, 1123-1124 [24 Cal.Rptr.2d 129].) Defendant argues rather convincingly that the whole restitution hearing resulted from her objections to the proposed restitution amount, including the victim's demand for interest on the embezzled money. She also argues that the *Neal* rule only applies to nonjurisdictional sentencing errors, and that the court's order here was beyond its jurisdiction.

We reject respondent's waiver argument and reach the merits of defendant's argument.

losses as a result of criminal activity shall have the right to restitution,' may be served." (*People* v. *Beck* (1993) 17 Cal.App.4th 209, 219 [21 Cal.Rptr.2d 250].)

■ The Legislature then enacted a number of statutes dealing with restitution. (3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) § 1325, pp. 1546-1547.) These sections were intended to implement the constitutional mandate and should be interpreted in the light of that mandate. (*People* v. *Broussard, supra,* 5 Cal.4th 1067, 1072.)

Penal Code section 1203.04 requires restitution when a person is granted probation. Section 1203.1 generally requires victim restitution as a term and condition of probation. It provides that: "The court may impose and require any or all of the above-mentioned terms of imprisonment, fine, and conditions, and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ."[8]

■ Restitution thus serves the twin functions of rehabilitation of the offender and compensation to the victim. (*People* v. *Cookson* (1991) 54 Cal.3d 1091, 1097 [2 Cal.Rptr.2d 176, 820 P.2d 278]; *People* v. *Baumann* (1985) 176 Cal.App.3d 67, 75 [222 Cal.Rptr. 32].) The restitution stated in Penal Code section 1203.1 has been interpreted to mean " 'reimbursement to the victims of crime for actual loss flowing from the charged offense or from related misconduct.' " (*Baumann, supra,* at p. 76.)

■ Based on the foregoing, it is clear that the order here should be upheld. "In view of the strongly expressed concern for victims suffering losses as a result of a criminal activity an interpretation effectively limiting a victim's rights to restitution would be in derogation of the expressed intent and purposes of Proposition 8 and the provisions adopted by the Legislature to implement this measure. The language of Penal Code section 1203.04 should not be so literally and so narrowly applied as [defendant] suggests. In our view, section 1203.04 does not limit a victim's rights to restitution. ■ Instead, victims are now constitutionally guaranteed the right to restitution whenever a person is convicted of a crime causing loss to the victim." (*People* v. *Baumann, supra,* 176 Cal.App.3d 67, 83.)

---

[8]Penal Code sections 1203.1 and 1203.04 govern when restitution is imposed as a condition of probation. Under those sections, rehabilitation of the criminal and deterrence of future criminal activity are the primary goals of restitution. Government Code section 13967 applies when probation is denied. That section is designed to compensate crime victims for economic losses suffered as a direct result of a crime. (*People* v. *Beck, supra,* 17 Cal.App.4th 209, 218.)

■ The purpose of Penal Code sections 1203.1 and 1203.04 is to require restitution orders to compensate the victim for his or her actual losses. We agree with respondent that, in the typical embezzlement case, these actual losses may include compensation for the loss of use of embezzled funds by an award of interest from the time of the embezzlement to the restitution hearing. We therefore find that such loss of use is an actual loss which is included within the statutory term "profits lost." (Pen. Code, § 1203.04.) The statute therefore authorizes the award made here, and the award is properly designed to make the victim whole.

■ The terms and conditions set by the trial court for victim restitution will not be overturned unless the trial court abused its discretion. "Restitution as a condition of probation is favored by public policy both as a means of doing justice to the victim [citation], and for rehabilitation of the offender [citations]. An order for restitution, i.e., attempting to make a victim whole, has generally been deemed a deterrent to future criminality. [Citation.] When ordering restitution, the court is not limited to the transaction or amounts of which the defendant is actually convicted. [Citations.] Where there is a factual and rational basis for the amount of restitution set, no abuse of discretion will be found by the reviewing court." (*People* v. *Walmsley* (1985) 168 Cal.App.3d 636, 639 [214 Cal.Rptr. 170].) ■ We find no abuse by the trial court of its discretion in ordering interest to be paid on the embezzled amounts.

■ Defendant also argues that the trial court improperly attempted to resolve her civil liability by means of the restitution order. It would be improper, of course, for the trial court to have done so: "Disposing of civil liability cannot be a function of restitution in a criminal case." (*People* v. *Richards* (1976) 17 Cal.3d 614, 620 [131 Cal.Rptr. 537, 552 P.2d 97].) It is also true that restitution necessarily affects civil liability, and reduces it to the extent restitution is paid. (*People* v. *Goulart* (1990) 224 Cal.App.3d 71, 82 [273 Cal.Rptr. 477].) The argument that civil liability was improperly determined in a restitution order is usually raised when the trial court orders repayment to a third party. (*People* v. *Williams* (1989) 207 Cal.App.3d 1520, 1524 [255 Cal.Rptr. 778]; *People* v. *Williams* (1966) 247 Cal.App.2d 394, 404 [55 Cal.Rptr. 550].) However, a restitution order designed to make a victim whole is not a substitute for civil damages, and we reject defendant's argument.[9] "Applying [defendant's] argument, all restitution conditions would be invalid. We therefore reject [her] argument." (*People* v. *Foster*

---

[9] The difference is that a civil judgment is entered irrespective of defendant's ability to pay, while a restitution order considers ability to pay. "While a civil damage award is rendered without regard to the defendant's ability to pay, ability to pay is a factor that must figure into setting the amount of restitution and thus the injured party or parties may not be able to

(1993) 14 Cal.App.4th 939, 953 [18 Cal.Rptr.2d 1]; *People* v. *Goulart, supra,* 224 Cal.App.3d 71, 85; *People* v. *Hodgkin, supra,* 194 Cal.App.3d 795, 805.)

### ABILITY TO PAY FOR SERVICES OF APPOINTED COUNSEL

■ Defendant next contends that the trial court erred in finding that defendant had the ability to pay for the services of court-appointed counsel. She relies on Penal Code section 987.8.[10] Subdivision (g) of that section defines ability to pay as "the overall capability of the defendant to reimburse the costs, or a portion of the costs, of the legal assistance provided to him or her, and shall include, but not be limited to, all of the following: [¶] (A) The defendant's present financial position. [¶] (B) The defendant's reasonably discernible future financial position. . . . [¶] (C) The likelihood that the defendant shall be able to obtain employment within a six-month period from the date of the hearing. [¶] (D) Any other factor or factors which may bear upon the defendant's financial capability to reimburse the county for the costs of the legal assistance provided to the defendant."

At the close of the hearing, the trial court, after stating its conclusions on the restitution fine, said: "Because of the jobs of the Defendant and her husband—which I quite frankly have a little trouble, just on an aside, recognizing that or believing that he didn't have some idea what was going on here—that she is able to pay for court-appointed counsel. And I computed conservatively, 20 hours at $40 dollars [*sic*], $800 for services of court-appointed counsel."

Defendant contends that the trial court improperly considered the earnings of her husband in determining her ability to pay.

We disagree. The evidence at the hearing showed that defendant was currently employed with an income of $640 per month. This evidence was properly considered under Penal Code section 987.8, subdivision (g). She also submitted a number of letters from persons employed by the school district. These positive letters support the conclusion that her employment there would continue.

The reference to her husband's income was proper under Penal Code section 987.8, subdivision (g)(2)(d). The fact that she had an employed

recover all of their damages through the restitutionary order." (*People* v. *Hodgkin* (1987) 194 Cal.App.3d 795, 805 [239 Cal.Rptr. 831].)

[10]Subdivision (b) of that section provides: "In any case in which a defendant is provided legal assistance . . . the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof."

spouse to pay some of the family living expenses is a factor "which may bear upon the defendant's financial capability to reimburse the county . . . ." We reject defendant's contention that such consideration amounts to imposition of vicarious criminal liability on the husband. Instead, we find that consideration of the husband's income merely reflects the reality that the husband's income was available to pay for living expenses that the wife would otherwise have to pay from her own income. Thus, more of her income would be available to repay the county.

In addition, as discussed below, defendant had assets which could be used to pay for her court-appointed counsel. The trial court also allowed the probation department to set up a repayment schedule so that the entire balance was not payable in a lump sum.

We find no abuse of the trial court's discretion in ordering defendant to reimburse the county for the costs of court-appointed counsel.

### ABILITY TO PAY THE RESTITUTION AWARD

■ In a closely related contention, defendant argues that the trial court erred in impliedly finding that she has the ability to pay the restitution award. She relies on Penal Code section 1203.2, which provides that restitution shall be consistent with a person's ability to pay. She argues that the trial court must have made an implied finding of ability to pay before ordering victim restitution, and that the court must have made its determination using both her income and that of her spouse.

Penal Code section 1203.2 also provides that "probation shall not be revoked for failure of a person to make restitution pursuant to Section 1203.04 as a condition of probation unless the court determines that the defendant has willfully failed to pay and has the ability to pay." Thus, the court must consider ability to pay in ordering restitution. (*People* v. *Hodgkin*, *supra*, 194 Cal.App.3d 795, 804.) However, under the section just quoted, it has been held that there is no equal protection violation in failing to make an ability to pay determination because "although a condition of probation may be imposed that the defendant make restitution without an express finding of ability to pay, probation may not be revoked without such a finding. The period of probation may not be extended for failure to make full restitution to the victim unless said failure is willful and the defendant has the ability to pay. . . . [A] defendant will not be incarcerated for failure to make restitution pursuant to a condition of probation when he does not have the financial ability to comply with such a condition of probation." (*People* v. *Ryan* (1988) 203 Cal.App.3d 189, 199 [249 Cal.Rptr. 750]; see, also, *People* v.

*Cookson* (1991) 54 Cal.3d 1091, 1096-1097 [2 Cal.Rptr.2d 176, 820 P.2d 278] [statute does not limit power to modify probation]; *People* v. *Goulart, supra*, 224 Cal.App.3d 71, 84-85.) Thus, if defendant is unable to pay restitution, her probation may not be revoked without a finding of a willful failure to pay, and an ability to pay.

In any event, defendant does not now contend that she lacks the ability to pay the restitution fine. The probation report discloses that defendant offered to repay the victim $20,000 by refinancing her home, but settlement was not reached because the victim demanded $25,000. The probation report thus supports a conclusion that defendant had the ability to pay the victim restitution ordered by the court. If the conclusion is incorrect, defendant will have the opportunity to show lack of ability to pay at a probation revocation proceeding.

### ORDER TO PAY COSTS OF APPOINTED COUNSEL AND PROBATION COSTS

■ Finally, defendant attacks the orders requiring her to repay costs of the probation report and probation supervision ($2,300) and the order requiring her to reimburse the county for court-appointed counsel ($800). She argues lack of notice of the proceedings.

Here, the probation report put defendant on notice that the department was recommending that she pay the costs of the presentence report and probation supervision in the amount of $2,300. Payment of these costs was ordered at the conclusion of the sentencing hearing on May 5, 1993. Defendant did not object at that time, nor did she appeal the judgment. We find that she had notice that the cost order would be made, and that her failure to object waived the issue.

Defendant cites former Penal Code section 1203.1f: "If practicable, the court shall consolidate the ability to pay determination hearings authorized pursuant to Sections 987.8, 1203.1b, and 1203.1c into one proceeding, and the determination of ability to pay made at the consolidated hearing may be used for all purposes relating to these listed sections." (Stats. 1991, ch. 437, § 3.) Of course, there was no need for consolidated hearings here, since the court had previously ordered payment of probation costs at sentencing.

Defendant relies on the recent case of *People* v. *Phillips* (1994) 25 Cal.App.4th 62 [30 Cal.Rptr.2d 321]. In that case, defendant challenged orders requiring him to pay probation costs and costs of court-appointed counsel. The court upheld the first order, saying ". . . the statute does not require a hearing at which evidence is formally presented if a defendant is

amenable to an informal proceeding. On the latter point, we note that defendant does not claim he lacked notice of the time and place of the section 1203.1b hearing, nor did defendant voice any objection to the manner in which the hearing was conducted. Accordingly, we deem any objection to the lack of a formal hearing to be waived." (*Id.*, at p. 70.)

The court also upheld the order assessing legal fees, rejecting defendant's contention that he did not expect the court to take up the matter of legal fees during the sentencing hearing. The court found that the probation report gave defendant sufficient notice that reimbursement for attorney fees would be considered at the sentencing hearing. (*People* v. *Phillips, supra*, 25 Cal.App.4th 62, 74.)

Here, neither the probation report nor the sentencing hearing gave defendant any notice that the issue of reimbursement for counsel fees was pending. At the start of the restitution hearing, the court noted that the issue was the amount of victim restitution. No other issue was presented.

Nevertheless, ability to pay was the subject of the victim restitution hearing. From that hearing, the trial court drew the conclusion that she was able to reimburse the county for the costs of legal representation. It therefore ordered such reimbursement. Counsel did not object to the order, and did not claim surprise or lack of notice. "Counsel did not offer any objection to the court's order for reimbursement on grounds of notice, lack of preparation, or lack of an opportunity to present evidence. The absence of any such objection indicates that defendant was not surprised by the court's consideration of his financial status and the subsequent order for reimbursement." (*People* v. *Phillips, supra*, 25 Cal.App.4th 62, 75.) The *Phillips* court then cited *People* v. *Brown* (1970) 13 Cal.App.3d 876, 882 [91 Cal.Rptr. 904]. The court there said: "Appellant cannot be heard to complain of inadequate notice when, represented by counsel, he participated in the hearing without making any mention of his present contention or asking for time to prepare." (*Id.*, at p. 882.)

We find the failure to object in the trial court on this ground to be a waiver of the right to make the argument on appeal. If a timely objection had been made, the trial court could have allowed further testimony on ability to pay under Penal Code section 987.8, could have allowed time to submit legal briefs on the issue, or could have scheduled further hearings to allow further preparation time. As noted above, the waiver rule applies to a number of nonjurisdictional sentencing errors. (*People* v. *Neal, supra*, 19 Cal.App.4th 1114, 1122-1123.) As *Neal* states: "Legal questions relating to a lack of notice at a sentencing hearing are waived on appeal in the absence of an

objection in the trial court." (*Id.*, at p. 1124.) The same is true here.[11] (Cf. *People* v. *Zito* (1992) 8 Cal.App.4th 736, 742 [10 Cal.Rptr.2d 491].)

DISPOSITION

The judgment is affirmed.

McKinster, J., and Richli, J., concurred.

A petition for a rehearing was denied August 22, 1995, and appellant's petition for review by the Supreme Court was denied November 2, 1995. Mosk, J., was of the opinion that petition should be granted.

---

[11]In addition, we note that any error could not have been prejudicial in light of the evidence supporting defendant's ability to pay victim restitution and the costs of probation supervision.