[No. B158075. Second Dist., Div. Six. Sept. 5, 2002.]

BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY
EMPLOYEES RETIREMENT ASSOCIATION, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

**COUNSEL**

David L. Muir and Margaret Oldendorf, Sr., for Petitioner.

No appearance for Respondent.

Teresia O'Riley, in pro. per., for Real Party in Interest Teresia O'Riley.

Michael D. Bradbury, District Attorney, and Miriam R. Arichea, Deputy District Attorney, for Real Party in Interest the People.

## OPINION

**YEGAN, Acting P. J.**—A retired county employee receiving a disability allowance commits a crime and is ordered to make restitution to the victim. The county retirement system is maintained under the County Employees Retirement Law of 1937 (CERL). (Gov. Code, § 31450 et seq.)[1] If the retired employee fails to make restitution, can the trial court order the county retirement system to deduct restitution payments from the employee's disability allowance? The answer is no. Although the victim has a constitutional and statutory right to restitution, the trust funds held for the employee are afforded constitutional and statutory protections as well. These protections have not been repealed by implication. As we shall explain, they can be harmonized with the victim's right to restitution. Accordingly, we issue a writ of mandate directing the trial court to set aside its order requiring the Los Angeles County Employees Retirement Association (LACERA) to deduct restitution payments from the disability allowance of real party in interest Teresia O'Riley.[2]

### Facts and Procedural History

O'Riley is a retired member of LACERA, which pays her a monthly disability allowance of $1,950. She was convicted of misdemeanor vandalism (Pen. Code, § 594) and placed on probation. One of the probation conditions was that she make $16,109 restitution to the victim. When she failed to make restitution, the court ordered LACERA to deduct $500 per month from her disability allowance and to forward the funds to the clerk of the court for payment to the victim. The order was purportedly pursuant to section 13967.2.

LACERA claimed that O'Riley's disability allowance was exempt from the trial court's order under section 31452 (hereafter the 31452 exemption). The trial court denied the claim. It concluded that the crime victim's constitutional right to restitution, as implemented by section 13967.2, prevails over section 31452. It reasoned: "In the present case the court's [income deduction] order, though entered pursuant to provisions of the Government and Penal Codes, was made to enforce the right of a crime victim to receive restitution for damages caused by criminal wrongdoing.

---

[1]Unless otherwise stated, all statutory references are to the Government Code.

[2]"LACERA is a public entity created under the authority of CERL to hold and invest the pensions and administer the benefits to the employees of the County of Los Angeles who are its members." (*Weber v. Board of Retirement* (1998) 62 Cal.App.4th 1440, 1442 [73 Cal.Rptr.2d 769].) Section 31720 authorizes LACERA to grant a disability retirement to members who have become incapacitated as a result of injury or disease. (*Gutierrez v. Board of Retirement* (1998) 62 Cal.App.4th 745, 748 [72 Cal.Rptr.2d 837].)

This is a state constitutional right guaranteed by Article I, section 28(b) of the California Constitution. The [L]egislature is mandated by the Constitution to enact statutes to enforce the right to restitution. The courts are mandated to order restitution to be paid and, pursuant to the relevant statutes, to enforce their orders. The court finds the crime victim's right to restitution cannot be thwarted by the exemption asserted by LACERA. . . ."

*The Victim's Right to Restitution: Constitutional and Statutory Provisions*

Proposition 8, known as the "Victims' Bill of Rights," was adopted by the people at the Primary Election held on June 8, 1982. Proposition 8 added section 28 to article I of the California Constitution. Subdivision (b) of section 28 grants crime victims a right to restitution: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section during the calendar year following adoption of this section."

Penal Code sections 1202.4 and 1214 implement the constitutional right to restitution. Penal Code section 1202.4, subdivision (f), provides in part: "In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." Penal Code section 1202.4, subdivision (i), provides: "A restitution order imposed pursuant to subdivision (f) shall be enforceable as if the order were a civil judgment." (See also Pen. Code, §§ 1202.4, subd. (a)(3)(B), 1214, subd. (b).)

Section 13967.2 establishes an enforcement mechanism for restitution orders that is unavailable for ordinary civil judgments. Upon entry of a restitution order, "[t]he court shall enter a separate order for income deduction upon determination of the defendant's ability to pay . . . ." (*Id.*, subd. (a).) The order shall be stayed until the defendant fails to meet his restitution obligation without showing good cause for the failure. (*Id.*, subd. (b)(1) & (2).) "The income deduction order shall direct a payer to deduct from all income due and payable to the defendant the amount required by the court to meet the defendant's obligation." (*Id.*, subd. (c).) The payer must forward the amount deducted to the clerk of the court. (*Id.*, subd. (f)(4)(A) & (C).)

*The Retired County Employee's Pension Rights: Constitutional and Statutory Protections*

California Constitution, article XVI, section 17 provides in pertinent part: "Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for . . . administration of the system, subject to all of the following: [¶] (a) . . . [A]ssets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants . . . ."

The 31452 exemption is part of CERL.[3] It exempts from execution or other court process the benefits under county retirement systems established pursuant to CERL. It provides: "The right of a person to a pension, annuity, retirement allowance, return of contributions, the pension, annuity, or retirement allowance, any optional benefit, any other right accrued or accruing to any person under this chapter, the money in the fund created or continued under this chapter, and any property purchased for investment purposes pursuant to this chapter, are exempt from taxation, including any inheritance tax, whether state, county, municipal, or district. They are not subject to execution or any other process of court whatsoever except to the extent permitted by Section 704.110 of the Code of Civil Procedure, and are unassignable except as specifically provided in this chapter."

Code of Civil Procedure section 704.110, subdivision (c) exempts public retirement benefits from execution except where the benefits are "sought to be applied to the satisfaction of a judgment for child, family, or spousal support . . . ."

*Proposition 8 and Section 13967.2 Did Not Impliedly Repeal the 31452 Exemption*

■ Neither Proposition 8 nor section 13967.2 mentions the 31452 exemption or any other exemption. The trial court in effect ruled that Proposition 8 and section 13967.2 impliedly repealed the 31452 exemption insofar as it would otherwise apply to an income deduction order enforcing a crime victim's right to restitution. ■ " '[A]ll presumptions are against a repeal by implication. [Citations.]' [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is

---

[3]The 31452 exemption was originally enacted as section 32 of the County Employees Retirement Act of 1937. (Stats. 1937, ch. 677, p. 1900.) It was added to the Government Code in 1947. (Stats. 1947, ch. 424, § 1, pp. 1263-1264.)

no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' [Citation.]" (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476-477 [66 Cal.Rptr.2d 319, 940 P.2d 906].) The same standards apply in determining whether a constitutional amendment impliedly repealed a statutory provision. (*People v. West* (1984) 154 Cal.App.3d 100, 108 [201 Cal.Rptr. 63] [Prop. 8 did not impliedly repeal Welf. & Inst. Code, § 203]; see also *Penziner v. West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252] [adoption of former § 22 of art. XX (now § 1 of art. XV) of the state Constitution did not impliedly repeal usury act].) " '[S]o strong is the presumption against implied repeals that when a new enactment conflicts with an existing provision, "[i]n order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first." ' " (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 43 [283 Cal.Rptr. 584, 812 P.2d 931].)

### A. *Proposition 8*

Proposition 8 did not revise the entire subject pertaining to the exemption of county retirement benefits. It does not even refer to the subject. Moreover, there is a rational basis for harmonizing the 31452 exemption and Proposition 8. "Insofar as the voters focused on restitution when adopting Proposition 8, it . . . seems clear they were concerned with the straightforward principle that those who had suffered loss from crimes committed against them should have the right to reparation from the crimes' perpetrators." (*People v. Birkett* (1999) 21 Cal.4th 226, 244 [87 Cal.Rptr.2d 205, 980 P.2d 912].) The 31452 exemption is not irreconcilable with this principle. It does not relieve a convicted defendant of the obligation to make restitution. It only exempts his or her county retirement allowance from "execution or any other process of court . . . ." (*Ibid.*) The defendant remains liable for the victim's loss.

In interpreting a similar exemption under the Employee Retirement Income Security Act of 1974, the United States Supreme Court observed that it "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them." (*Guidry v. Sheet Metal Workers Pension Fund* (1990) 493 U.S. 365, 376 [110 S.Ct. 680, 687, 107 L.Ed.2d 782].) The 31452 exemption reflects a considered policy choice by the state

Legislature to safeguard a stream of income to participants in county retirement systems established pursuant to CERL.[4] Nothing in the official ballot pamphlet section for Proposition 8 indicates that the electorate intended to interfere with this 65-year-old legislative policy. (See *People v. Birkett, supra,* 21 Cal.4th at pp. 243-244.)

Subsequent state constitutional amendments show that Proposition 8 was not intended to and does not limit the application of the 31452 exemption. In 1984 the electorate adopted Proposition 21, amending section 17 of California Constitution, article XVI. The amendment added subdivision (a), which provides: "The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system." The ballot pamphlet argument in support of Proposition 21 stated that it "[d]eclares all assets of a public pension or retirement plan to be *trust funds.* It provides that, apart from reasonable administrative costs, the *only purpose* for which these trust assets can be used is the delivery of retirement benefits." (Ballot Pamp., Primary Elec. (June 5, 1984) argument in favor of Prop. 21, p. 26.) The trial court's order defeats the letter and spirit of this constitutional provision.

Section 17 of California Constitution article XVI was again amended in 1992 by Proposition 162, known as "The California Pension Protection Act of 1992" (hereafter the Act). The Act added the following language to subdivision (a) of section 17: "The retirement board of a public pension or retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. The retirement board shall also have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries." A declared intention of the Act is "[t]o ensure that the assets of public pension systems are used exclusively for the purpose of efficiently and promptly providing benefits and services to participants of these systems, and not for other purposes." (Act, § Two, subd. (d).)

Affirmance of the trial court's order would conflict with the constitutional mandate that assets be used for the exclusive benefit of participants and their

---

[4]This policy choice is consistent with the express purpose of CERL, which "is to recognize a public obligation to county and district employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation for future services and to provide a means by which public employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed." (§ 31451.)

beneficiaries.[5] An affirmance would also erode the retirement board's "sole and exclusive fiduciary responsibility" as well as its "sole and exclusive responsibility to administer the system . . . ." (Cal. Const., art. XVI, § 17, subd. (a).)

## B.   *Section 13967.2*

■   The 31452 exemption was also not impliedly repealed by section 13967.2. There is a rational basis for harmonizing the statutes. Section 13967.2 was enacted in 1990 by Assembly Bill No. 1893 (1989-1990 Reg. Sess.) (hereafter Assembly Bill 1893). (Stats. 1990, ch. 45, § 3, p. 257.) Legislative committee analyses of Assembly Bill 1893 show that the purpose of section 13967.2 was to relieve victims of the burden of enforcing restitution orders.[6] None of the analyses suggests an intent to override the exemptions to which a judgment debtor is entitled. The analyses were "before the Legislature during its deliberations on the legislation in question" and "fall[] within the class of documents that [our Supreme Court] traditionally has considered in determining legislative intent. [Citation.]" (*People v. Benson, supra*, 18 Cal.4th at p. 34, fn. 6.)

An analysis prepared for the Assembly Committee on Public Safety observed: "Ordinarily, when an offender fails to make restitution payments, the victim has the burden of initiating a court action to enforce the previous court order. By requiring the stayed order for income garnishment, the bill establishes an automatic mechanism to effect civil enforcement of the restitution payments when the offender fails to meet his or her payment obligations. Essentially the bill puts the burden on the offender to show cause for the missed payments, and, thus, saves the victim the trouble of having to bring a new court action to enforce the court-ordered restitution." (Assem. Com. on Pub. Safety, Analysis of Assem. Bill 1893 (1989-1990 Reg. Sess.) as amended Jan. 4, 1990, pp. 2-3.)

An analysis prepared for the Senate Committee on Judiciary concluded: "Restitution is a principle attractive in theory but troublesome in application" because "direct repayment to victims by perpetrators is difficult to

---

[5]We need not and do not hold that this constitutional mandate grants retired county employees the constitutional right to a disability or retirement allowance. It is sufficient to recognize that trust funds held for delivery to retired employees are given constitutional protection.

[6]LACERA has provided us with a legislative history of Assembly Bill 1893 prepared by Legislative Intent Service. These materials include legislative committee bill analyses, which we judicially notice pursuant to Evidence Code sections 459 and 452, subdivision (c). (*People v. Benson* (1998) 18 Cal.4th 24, 34, fn. 6 [74 Cal.Rptr.2d 294, 954 P.2d 557].) An analysis prepared for the Senate Committee on Judiciary is included in the record on appeal.

enforce." (Sen. Com. on Judiciary, Analysis of Assem. Bill 1893 (1989-1990 Reg. Sess.) as amended Feb. 27, 1990, p. 3.) The analysis noted: "Restitution is enforceable as a civil judgment. Thus, in situations where the offender fails to compensate the victim as ordered, the burden falls upon the victim to seek enforcement by further court action." (*Id.*, at p. 2.) Assembly Bill 1893 "would seem to propose some procedural improvement, establishing an automatic wage garnishment procedure . . . ." (*Id.*, at p. 3.) "The procedure . . . would, presumably, relieve the burden imposed on some victims in pursuing civil judgments for enforcement." (*Ibid.*)

The analyses do not refer to any judgment debtor exception. The Legislature contemplated that restitution orders would be subject to the same exemptions generally applicable to civil judgments. Statutes provide that a restitution order shall be enforceable as if it were a civil judgment. (Pen. Code, §§ 1202.4, subds. (a)(3)(B) & (i), 1214, subd. (b).) When the Legislature wanted a particular exemption to be inapplicable to restitution orders, it expressly said so. In 1996 the Legislature amended Code of Civil Procedure section 704.090. (Stats. 1996, ch. 1077, § 1.) Before the amendment, the section exempted a prisoner's trust account up to $1,000. The amendment lowered the exemption to $300 for restitution fines and orders. (Code Civ. Proc., § 704.090, subd. (b).) Had the Legislature intended the 31452 exemption to be inapplicable to income deduction orders under section 13967.2, it would have amended section 31452 to carve out an exception for such orders.

The 31452 exemption expressly creates an exception only to the extent permitted by Code of Civil Procedure section 704.110. "With the only exception[] so explicitly specified, there is no room for the court to write in additional exceptions. [Citations.]" (*Reynolds v. Reynolds* (1960) 54 Cal.2d 669, 681 [7 Cal.Rptr. 737, 355 P.2d 481].)

### C.   *The Parsons Case*

In concluding that the 31452 exemption is inapplicable to income deduction orders, the trial court relied on *Parsons Brinckerhoff Quade & Douglas, Inc. v. Kern County Employees Retirement Assn.* (1992) 5 Cal.App.4th 1264 [7 Cal.Rptr.2d 456] (hereafter *Parsons*). *Parsons*, however, is distinguishable.

In *Parsons* the plaintiff sought to foreclose a mechanic's lien against property owned by Kern County Employees Retirement Association (KCERA). The lien was for unpaid architectural design services. KCERA contended that the 31452 exemption prohibited an enforced sale of the

property, which had been purchased with retirement funds. The appellate court concluded that the plaintiff's lien rights were guaranteed by article XIV, section 3 of the California Constitution. This section provides: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." The court held that section 31452 is invalid to the extent it would otherwise defeat a constitutionally guaranteed mechanic's lien: "Where a statute operates unambiguously to deprive a person of a constitutional guarantee, it is invalid, and the courts must so declare. [Citations.]" (*Parsons, supra,* 5 Cal.App.4th at p. 1269.)

Unlike KCERA in *Parsons,* LACERA did not seek to apply the 31452 exemption to abrogate a constitutionally guaranteed lien. The restitution provisions of Proposition 8 do not create a lien or any other means of enforcing the right to restitution against particular property. They create only a general and qualified constitutional right to restitution. (See *ante,* at p. 1066.) The implementation of this right is left to the Legislature, which decided not to except restitution orders from the exemption of section 31452.

## Disposition

Let a peremptory writ of mandate issue directing the trial court to set aside its order directing LACERA to deduct $500 per month from the disability allowance of Teresia O'Riley and to forward that amount to the clerk of that court.

Coffee, J., and Perren, J., concurred.